IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 4:04CR3020 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| vs. | ) | **AND ORDER** |
| | ) | |
| ALFREDO GARCIA, also known as | ) | |
| Afredo Garcia-Hill, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before me for initial review of the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 motion") filed by the defendant, Alfredo Garcia (filing 83).[1]  Among other things, the defendant claims that his appointed lawyer was ineffective and that he was sentenced in violation of Booker.[2]  No matter how it is construed, the motion is insufficient and the files and records conclusively disprove the claims.  Thus, the motion will be denied.  I next explain the reasons for my decision.

---

[1]  Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides:

> The judge who receives the motion must promptly examine it.  If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.  If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

[2] United States v. Booker, 543 U.S. 220 (2005).

## *I.  BACKGROUND*

The defendant was charged with conspiracy to possess with intent to distribute methamphetamine in an amount of 500 grams or more between January 1, 2002 and February 16, 2004.  (Filing 23.)   Garcia entered a "not guilty" plea, and the case was tried to a jury.  Pursuant to the Criminal Justice Act, Garcia was represented by John F. Aman, an experienced defense lawyer.

The evidence against Garcia was strong.  In addition to approximately 55 grams of methamphetamine that was seized from individuals whose drug-source was allegedly Garcia (filing 39 (exhibits 1 and 2)), three unrelated witnesses gave damaging eye witness testimony about the defendant's narcotics trafficking.  The defendant's own testimony did not help him either.

Raymond Marion testified that on several occasions he saw Samantha Canby in possession of large quantities of methamphetamine shortly after Canby had a meeting with the defendant and despite the fact that Canby had earlier said that she was out of drugs.  (Filing 63 at CM/ECF pages 32-56.) Marion specifically identified the defendant as the person who met with Canby and who apparently supplied her with drugs.  (Filing 63 at CM/ECF page 40.)

Keaton Amos testified that after he was introduced to Garcia by Samantha Canby he bought large quantities of methamphetamine directly from the defendant.  (Filing 64 at CM/ECF pages 10-71.)   Amos specifically identified the defendant as the person Samantha Canby introduced him to and from whom he purchased methamphetamine.  (Filing 64 at CM/ECF page 11.)

Bobbie Parker testified her brother introduced her to a man she came to know as "Fred" for the purpose of purchasing methamphetamine and that she thereafter bought large quantities of the drug directly from "Fred" and also indirectly from

"Fred" through Samantha Canby. (Filing 65 at CM/ECF pages 14-59.) Parker identified the defendant as the man she knew as "Fred". (Filing 65 at CM/ECF page 14.)

The defendant testified, but his testimony was not convincing. He admitted that he knew Canby, Amos, and Parker, and that the had been at Canby's residence, but he denied selling drugs to any of them. (Filing 65 at CM/ECF pages 101-104.) He testified that a man by the name of "Paisa" would be present at Canby's house when Keaton Amos was present. (Filing 65 at CM/ECF page 102.) The defendant also said he met "Paisa" at a discotheque, that "Paisa" had been the defendant's neighbor, and that "Paisa" would come to the defendant's home four or five times every day. (Filing 65 at CM/ECF page 102.)

On cross-examination, Garcia admitted that he had never had any disputes with Amos or Parker. (Filing 65 at CM/ECF pages 115.) Then, he was asked: "Why do you think the two of them [Amos and Parker] are saying you dealt a lot of methamphetamine?" Garcia answered, "Not much could I say about it but whenever, he [Amos] would always show up when Paisa was there, not a lot, but he would always show up when Paisa was there and then the same thing regarding what she [Parker] said here." (Filing 65 at CM/ECF pages 115-116.)

Regarding the mysterious "Paisa," Garcia said that he did not know "Paisa's" real name even though both "Paisa" and Garcia came from the same country, they were neighbors in Nebraska, and "Paisa" frequently came to the defendant's home. (Filing 65 at CM/ECF pages 111.) And, further, despite the effort to implicate "Paisa", Garcia admitted that he never saw "Paisa" in possession of any drugs. (Filing 65 at CM/ECF page 113.)

Garcia also admitted that he had more than a passing relationship with Canby, Amos, and Parker. He said they would come to his home, that he had gone to Amos'

-3-

home, and that he had visited Canby's home "many times." (Filing 65 at CM/ECF pages 117-118.)

Still further, in response to a question about whether Bobbie Parker had lied when she said that Parker's brother and Garcia had used cocaine in front of her during negotiations about the sale of methamphetamine (filing 65 at CM/ECF page 19), the defendant admitted that he had been a cocaine user. (Filing 65 at CM/ECF page 118-119.) He asserted, however, that he had never used cocaine while Parker was present.

On September 2, 2004, the jury found the defendant guilty. (Filing 43 at CM/ECF page 1.) In addition, the jury specifically found beyond a reasonable doubt that Garcia was responsible for at least 5 kilograms but less than 15 kilograms of methamphetamine. (Filing 43 at CM/ECF page 2.)

A presentence report was prepared. (Filing 54 (PSR).) Based upon the jury's quantity determination, the probation officer set the base offense level at 36. (PSR ¶ 23 (filing 54).) The probation officer added two points for obstruction of justice as the officer concluded that the defendant had lied when he testified that he was not involved in the crime. (PSR ¶ 27 (filing 54).)

Mr. Aman objected to the obstruction of justice enhancement. I sustained that objection, writing that:

> The defendant's objection [filing 47] to an enhancement for obstruction of justice due to perjury at trial is sustained because that enhancement must be explicitly proven beyond a reasonable doubt to the unanimous satisfaction of a petit jury under the principles announced in Blakely v. Washington, 124 S.Ct. 2531 (June 24, 2004). Since the petit jury was not instructed to explicitly determine, unanimously and beyond a reasonable doubt, whether the defendant committed perjury when he testified, the enhancement cannot be applied in this circumstance.

(Filing 51 at CM/ECF page 1 and ¶ 1) (footnote omitted.)[3]

The defendant was sentenced on December 3, 2004. At sentencing, the government moved to continue the matter until the Booker case was resolved. (Filing 69 at CM/ECF page 3.) I denied the motion. (Filing 69 at CM/ECF page 4.) Instead, I specifically stated that I would impose the sentence taking into consideration the "overriding statutory scheme" and, in particular, section "3553(a)(2)." (Filing 69 at CM/ECF page 4. See also filing 69 at CM/ECF page 6.)

Without the obstruction of justice enhancement, I computed the Guidelines at a total offense level of 36 and a criminal history category of III. This yielded a prison term of between 235 and 293 months. (Filing 69 at CM/ECF page 5.)[4] The lawyers agreed that this was the proper computation. (Filing 69 at CM/ECF pages 5-6.) I sentenced the defendant to 276 months in prison. (Filing 69 at CM/ECF page 10; Filing 55 at CM/ECF page 2.)

The defendant filed a timely appeal. Aman submitted an Anders brief arguing that I erred by granting the government's motion in limine, precluding any party from referring to the government's decision not to call a particular witness unless the party showed the relevance of such a reference. He also sought leave to withdraw.

On December 28, 2005, the Court of Appeals rejected Garcia's argument, denied the appeal, and granted Aman leave to withdraw. (Filing 77.) The judgment of the Court of Appeals was filed in this court on February 13, 2006. (Filing 82.)

---

[3]In this regard, the defendant was, of course, very lucky. The law has changed since the time I sustained the objection. I would now be able to find that the defendant obstructed justice by virtue of his testimony even though that issue was not submitted to the jury.

[4]Had the defendant received an obstruction enhancement, his custodial Guidelines range would have been 292 to 365 months. (PSR (filing 54) ¶ 67.)

-5-

There is no evidence that Garcia filed a petition for certiorari with the Supreme Court. Garcia filed his § 2255 motion on March 26, 2007. (Filing 83.)[5]

## *II. ANALYSIS*

Most of what Garcia complains about centers on the performance of his lawyer. I thus concentrate on that question, leaving Garcia's other complaints to a brief discussion at the end of this opinion.

### *Claims Against Aman*

In order to prevail on his claim that his counsel rendered ineffective assistance of counsel, Garcia must show that (1) "'counsel's representation fell below an objective standard of reasonableness,'" and (2) "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Nguyen v. United States, 114 F.3d 699, 703-04 (8th Cir. 1997) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)).

My "scrutiny of counsel's performance must be highly deferential" and I must also "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Reed v. United States, 106 F.3d 231, 236 (8th

---

[5]It thus appears that Garcia's motion was timely. Garcia had one year from the time the judgment was final to seek 2255 relief. 28 U.S.C. § 2255(1). The judgment was not final until the expiration of the 90-period for seeking review in the Supreme Court. See Clay v. United States, 537 U.S. 522, 532 (2003) ( "[F]or federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires."); Sup. Ct. R. 13.1 ("Unless otherwise provided by law, a petition for writ of certiorari to review a judgment in any case, civil or criminal, entered by . . . a United States court of appeals . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment.").

Cir. 1997) (affirming denial of § 2255 motion where petitioner claimed that he was denied effective assistance of counsel at trial because of the manner in which counsel examined witnesses).

An evidentiary hearing is unnecessary if the movant makes an insufficient preliminary showing on either or both prongs. Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (affirming denial of § 2255 motion without a hearing in the face of an ineffective assistance of counsel claim; stating that no evidentiary hearing is required where "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.").

Garcia argues that Aman was ineffective because he failed to "prevent . . . the jury hearing the 'untruthful' testimony of Bobbie Parker" and other witnesses. (Filing 83 at CM/ECF page 7.) This is nonsense.

For example, Aman successfully sought an order from me allowing him, in the presence of the defendant, to interview Parker and the case agent during the trial to establish that Parker had lied on an unrelated matter. (Filing 65 at CM/ECF pages 2-7.) Aman was then able to force the government and Parker to admit in front of the jury that Parker misled the government in an effort to protect a friend about some other drug deals. (Filing 65 at CM/ECF pages 64-65 and CM/ECF pages 83-85.) In short, the files and records conclusively establish that Aman did all he could do to punch holes in the testimony of the government's witnesses, and Garcia has shown no reason to believe that Aman could have done anything differently.

Garcia next argues that Aman was ineffective because he failed to procure the attendance of "Paisa" and Samantha Canby as witnesses for the defendant at trial. (Filing 83 at CM/ECF page 8.) When the defendant submitted an oral pro se motion

to continue that I took up immediately prior to trial, Aman advised me that neither he nor the government could locate these people. (Filing 63 CM/ECF pages 7-8.)[6]

Given the fact that the defendant testified that he had virtually no information about "Paisa" and that he never saw "Paisa" with drugs, it is impossible to conclude that Aman's failure to locate this mystery man fell below the standard of care or that it harmed the defendant. Insofar as Canby is concerned, if the government could not locate Canby and she was receiving drugs from the defendant according to three witnesses who testified under oath, it is also impossible to conclude that the failure of Aman to locate Canby establishes ineffectiveness or that Canby's testimony would have helped the defendant.

In short, because Garcia has failed to explain why Aman's performance was deficient or how these witnesses would have helped him, his claim about the lawyer fails at the pleading stage. See, e.g., Saunders v. United States, 236 F.3d 950, 952 (8th Cir.) (§ 2255 motion was properly denied without an evidentiary hearing despite the claim that counsel improperly failed to call alibi witnesses where movant failed to identify witnesses, provide substance of their anticipated testimony or explain how the results would have been different), cert. denied, 533 U.S. 917 (2001).

Next, Garcia argues that Aman was ineffective because he failed to challenge the application of the then mandatory Guidelines at sentencing and on appeal. (Filing 83 at CM/ECF pages 9, 14-18.) In this regard, I realize that Garcia was sentenced after Blakely and before Booker, but his direct appeal was submitted sometime after Booker.[7]

---

[6]Counsel for the government later told the jury: "Don't know where Canby is." (Filing 65 at CM/ECF page 141.)

[7]I take judicial notice of the Court of Appeals' docket sheet in United States v. Afredo Garcia, No. 04-4118, available at https://ecf.ca8.uscourts.gov. Among other

When the files and records are consulted, Garcia's sentencing argument falls apart. Given (1) that the jury found the drug quantity beyond a reasonable doubt and there were no other factual issues that drove the sentence, (2) that I sustained Aman's objection to the obstruction of justice enhancement, (3) that I specifically stated that I would impose the sentence taking into consideration the "overriding statutory scheme" and, in particular, section "3553(a)(2)[,]" and (4) that I sentenced the defendant above the minimum Guidelines range and at about the middle, Aman was not ineffective and Garcia was not harmed by counsel's failure to assert a Booker-related Guidelines sentencing argument before me or on appeal. See, e.g., United States v. Brooks, 417 F.3d 982, 985 (8th Cir. 2005) (where non-constitutional Booker error was preserved, the Court of Appeals would not reverse the sentence when the district court was aware that it could have imposed a lesser sentence and it choose not to do so, instead imposing a sentence at the middle of the applicable range), cert. denied, 126 S. Ct. 818 (2006).[8]

To avoid any doubt, I now state that I would have imposed a sentence at least as severe had I sentenced the defendant after Booker. Moreover, and as I earlier observed at note 3, the defendant avoided an obstruction of justice enhancement because of the uncertain state of the law at the time of sentencing. After Booker, the defendant would not have been afforded that break. Thus, in stark contrast with

---

things, that document shows that the appeal was docketed on December 21, 2004, the Anders brief was filed on April 12, 2005, and the case was submitted on the briefs, without argument, on December 27, 2005.

[8]A "non-constitutional Booker error" is one where the mandatory Guidelines were applied, but no judge-found facts were used to enhance the sentence. See, e.g., United States v. Farris, 449 F.3d 822, 823 (8th Cir.) ("Because the district court determined Farris's sentencing guidelines range with no enhancements based on judge-found facts, the error in using mandatory guidelines is not of constitutional magnitude, . . . ."), cert. denied, 127 S. Ct. 418 (2006).

Garcia's assertion, Aman might have erred had he sought to give me another chance to sentence the defendant.

Finally, Garcia makes an argument that Aman was not sufficiently zealous. He appends to his papers unauthenticated correspondence he had with Aman regarding the filing of this motion and Garcia's effort to force Aman to give him documents. Suffice it to say that Garcia has wholly failed to provide any reason to believe that Aman failed to ardently represent him.

### *Other Claims*

Garcia makes a variety of other claims. I have considered them all. They are obviously without merit and it would be a waste of time to engage in an extended discussion of them. Nonetheless, I make four brief observations:

* For the reasons discussed earlier, even if there was Booker error, it did not matter. Beyond any reasonable doubt, the sentence would have been the same or greater.

* It is untrue that I appointed Aman to represent Garcia on appeal. Following standard practice, the Court of Appeals made the appointment of Aman by order entered on December 21, 2004. (See the fourth entry on the Court of Appeals' docket sheet in United States v. Afredo Garcia, No. 04-4118.) Moreover, the fact that Aman told the Court of Appeals that it might want to appoint another lawyer because Garcia might want to assert an ineffective assistance of counsel claim (see filing 83 at CM/ECF page 28) is meaningless. The Court of Appeals typically requires ineffective assistance of counsel claims to be asserted in post-conviction proceedings rather than on direct appeal. Garcia has now been

-10-

heard on his claim of ineffective assistance of counsel, and he has shown no prejudice resulting from the Court of Appeals' decision to appoint Aman to prosecute the direct appeal.

*   It is untrue that I failed to instruct the jury on the credibility of the witnesses who testified against Garcia. On the contrary, I gave at least four specific instructions that focused the jury's attention on witnesses like Marion, Amos, and Parker. (Filing 41, CM/ECF pages 7-10 (Instructions 6-9).)

*   The evidence against Garcia was plainly sufficient. I can state as an impartial observer who heard the testimony and saw the witnesses that the government's case was persuasive.

IT IS ORDERED that the defendant's § 2255 motion (filing 83) is denied with prejudice in all respects, and a separate judgment shall be entered.

April 12, 2007.                    BY THE COURT:

                                   s/ *Richard G. Kopf*
                                   United States District Judge